**HC TULIFUA TINI P. LAM YUEN, Senior matai of the Tulifua Family for himself and on behalf of the Tulifua Family, Appellant,**

**v.**

**TALAE TUITELE and HEIRS OF UAINE TUITELE, TOM HO CHING and PATRICIA HO CHING, Appellees.**

High Court of American Samoa
Appellate Division

AP No. 14-98
(LT No. 10-93)

July 27, 1999

Before WARD,[*] Acting Associate Justice, GOODWIN,[**] Acting Associate Justice, MUNSON,[***] Acting Associate Justice, AFUOLA, Associate Judge and ATIULAGI, Associate Judge.

Counsel: For Appellant, Afoa L. Su'esu'e Lutu
 For Appellees, Gata E. Gurr

## OPINION AND ORDER

Appellant High Chief Tulifua Tini P. Lam Yuen, Senior Matai of the Tulifua Family ("HC Tulifua"), brought suit in the Land and Titles Division of the High Court on February 26, 1993, against Appellees Talae Tuitele ("Talae"), the Heirs of Uaine Tuitele ("Heirs"), and Tom and Patricia Ho Ching ("Ho Chings") to set aside a 1989 land registration of individually owned land of the Heirs, to object to a

---

[*] The Honorable John L. Ward II, District Court Judge, serving by designation of the Secretary of the Interior.
[**] The Honorable Alfred T. Goodwin, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of the Interior.
[***] The Honorable Alex R. Munson, Chief Judge, United States District Court for the Northern Marianas Islands, serving by designation of the Secretary of the Interior.

proposed lease of a portion of said land to Ho-Chings, and to claim title to the subject land as the communal land of the Tulifua family. The case proceeded to trial on December 18, 1997 with HC Tulifua and Talae present with counsel throughout the trial.

The trial court issued its Opinion and Order on April 24, 1998, which affirmed the registration of the subject land as the individually-owned land of the Heirs and invalidated the purported lease of a portion of this land to the Ho Chings. A motion by H.C. Tulifua "For Reconsideration and/or New Trial" was heard by the trial court on June 4, 1998. An Order denying that motion by the trial court was issued on July 13, 1998. This appeal followed.

## Factual Background

This controversy concerns the 1989 registration of a previously unregistered parcel of 14 plus acres of land known as "Nonuaimoa" in the village of Taputimu, American Samoa. On June 5, 1971, a survey of this parcel was conducted resulting in a written legal description of the parcel and a drawing reflecting the legal description. Plaintiff's Exhibit #1 ("Plain. Exh."). Both the written description and the surveyor's drawing list the land claimants as: Nelson Tuitele, Jr.; Alaisea E. Tuitele; Lanitiiti E. Tuitele; Mata'u L. Tuitele; Lefiu M. Tuitele; and Uaine F. Tuitele. The surveyor's certificate, appearing on the survey drawing, recites the survey was conducted in June of 1971 in accordance with applicable government regulations at the request of one "Uaine T." Also appearing on the drawing is the Land and Survey Division Manager's Certificate, dated June 18, 1974, further certifying the survey map conformed with government regulations.

Nearly 18 years after the 1971 land survey, Talae filed a notice for the proposed registration of land with the territorial registrar on May 10, 1989, along with the 1971 survey and a certificate signed by the land surveyor and village mayor to the effect that public oral notice of the land survey had been given in the village of Taputimu at a meeting of the village chiefs on June 5, 1971. Plain. Exh. # 1. Talae's notice proposed to register the 14.18 acre parcel of the land "Nonuaimoa" as the individually owned land of the "Heirs of Uaine Tuitele". Plain. Exh. # 1. The notice was posted by a staff member of the registrar's office and an affidavit to that effect signed and filed by that employee the same day, May 10, 1989. Plain. Exh. # 1.

Some days later, the mayor ("pulenuu") of the village of Taputimu, came into the registrar's office carrying the copy of the notice of land registration which had been posted in his village and inquired of the registrar as to the location of the land "Nonuaimoa". Reporter's Transcript ("R.T.") at 45 & 46. This notice was not reposted at any time

in the village during the balance of the mandatory 60-day posting period. Trial Court's Opinion and Order ("Trial Ct. Opin. & Ord.") at 6, n.3.

On May 22, 1989 Public Law 21-1 ("P.L. No. 21-1") became effective. This land statute, enacted under the strict, successive session, super-majority prescriptions of Article I, Sec. 3 of the Revised Constitution of American Samoa ("R.C.A.S.") supplemented the statutory notice requirements for registering title to lands and prohibited the registrar from issuing certificates of ownership unless notarized statements were on file verifying that the notice posting requirements had been fulfilled. *Tulifua v. Tuitele*, 2 A.S.R.3d 205, 209-210 (Trial Div. 1998); A.S.C.A. § 37.0103.

On July 13, 1989, the registrar issued a certificate of registration "as an individually-owned land of heirs of Uaine Tuitele" of a "portion of land 'Nonuaimoa' in the village of *Leone*, containing 14.18 acres more or less." Plain. Exh. 3 (emphasis added). At some undisclosed date thereafter this certificate was apparently amended to read: "...portion of land 'Nonuaimoa' in the village of *Taputimu* . . ." Plain. Exh. # 1 (emphasis added).

The late Uaine Tuitele was a member of the Tuitele family of the Village of Leone and a member of the Tulifua family of the Village of Taputimu. He occupied the subject land at least as far back as 1929. *Tulifua* at 210. The senior matai position of the Tulifua family was vacant when the subject land was surveyed in 1971 and when registered in 1989. *Id.*

Appellant HC Tulifua succeeded to his title on June 23, 1992, Plain. Exh. # 2, and subsequently filed an objection to a proposed "...lease between the Talae family and Mr. and Mrs. Tom Ho Ching concerning portion of land 'Nomuaimoa' . . . being posted for a period ending January 4, 1993." Plain. Exh. # 4. This objection, filed with the Territorial Registrar on December 24, 1992, claimed the subject land was Tulifua communal land and that the land registration by the Talae family was invalid. *Id.* Subsequently, Appellant H.C. Tulifua filed a complaint against Talae Tuitele and heirs of Uaine Tuitele, as well as the Ho Chings, on February 26, 1993, L.T. No. 10-93.

## Discussion

### A. Registration of Title to the Land "Nonuaimoa" was Invalid

#### 1. American Samoan Land Ownership System

 We first address the issue of the validity of the registration of title to the land "Nonuaimoa" to the Heirs as their individually-owned land. Although we ultimately decide this matter on a narrow issue of law, we

do so within the broader context of the unique facts and issues of law this case presents or suggests.

> American Samoa has a subtle and complex system for developing and preserving public records of land ownership. The Samoan system blends a Torrens registration system, a recording system, and special Samoan provisions to protect communal ownership and the Samoan way of life.
>
> * * *
>
> In a Torrens registration system, an owner of land registers the land, and obtains a certificate of registration. . . . The certificates are subject to being set aside only in very limited circumstances. . . . The certificate has the same function as a decree in a quiet title suit, so "meticulous attention to the proper manner for service of process" is "absolutely essential to assure certainty to persons who wish to rely on the conclusiveness of the certificate."

*Foloi, et. al. vs. Tuitasi,* 18 A.S.R. 2d 88, 93, 94 (App. Div. 1991) (*quoting* 6A R. Powell, The Law of Real Property, 908[3][a], at 83-8 (Rohan ed. 1991)).

## 2. Trial Court Committed Errors of Law in Validating Registration of the Land

### a. Trial Court's Findings

We note that both parties cite *Ifopo v. Siatu'u*, 12 A.S.R. 2d 24 (App. Div. 1989), as supporting their respective legal positions in this controversy. That case requires a trial court, "absent compelling proof to the contrary" to conclusively presume "the Registrar recorded a title only after complying with his obligations under the law". *Id.* at 28. Further, that case appears to limit consideration for judicial relief to those "registrations that are clearly proved to have been procured by fraud, or in which failure to afford the required notice affirmatively appears in the record of the registration itself." *Id.* at 28.

The trial court found that the affidavit of posting the statutorily required notice of the proposed land registration was facially defective. *Tulifua v. Tuitele,* 2 A.S.R.2d 205, 209 (Trial Div. 1998). The affidavit confirmed only that a single notice was posted in the village of Taputimu and that notice was posted at the Administration building at Fagatogo. The affidavit was also signed by the staff member of the registrar's office on May 10, 1989, even though the affidavit clearly stated that the notice was posted for a period from May 10, 1989 to July 10, 1989. *Id.*

The trial court noted that the credible testimony at trial of the staff member in charge of the posting was to the effect that two, not one, notices were actually posted in the village of Taputimu, although that same staff member testified that the notice torn down by the mayor of Taputimu and taken to the registrar was not replaced during the May 10 to July 10, 1989 posting period. *Id.* at 209, n.3.

It is an undisputed fact that in this land registration the registrar had actual, personal knowledge that at least one of two land registration notices statutorily required to be posted in the village of Taputimu for 60 days prior to issuing the certificate of land registration had been removed by the mayor of that village. Notwithstanding this fact the trial court ruled that because "the Territorial Registrar is obligated to register a land title only when all of the statutory requirements are met, the court should not assume that the Registrar did not carry out this responsibility." *Id.* at 209.

b. Trial Court's Errors of Law

We disagree. The trial court buttressed its decision not to disturb this finalized land registration upon its analysis of the statutory notice requirements effective on the date of May 10, 1989, when Talae filed his notice of land registration. *Id.* at 6-7. Briefly summarized, the trial court held that P.L. No. 21-1, containing specific amendments to the land registration notice procedures, did not apply to Talae's land registration because Talae had filed 12 days before the amended notice procedures took legal effect.

(1). Effect of P.L. No. 21-1

P.L. No. 21-1 left unchanged the pre-existing statutory requirements that notice of a land registration be posted for 60 days at the courthouse in Fagatogo and in two locations in that village containing or nearest to the land offered for registration. The amendments, however, specifically required strict verification of such 60 day postings to be filed with the Registrar, respectively, by the Clerk of Court and the mayor of the village in which the notices were posted.

In addition, the new law required notice of the proposed land registration "be published in a local newspaper at least once each 30 days during the 60-day notice period." A.S.C.A. § 37.0103(a). P.L. No. 21-1 contained one further, and significant, requirement in a new subsection:

> The territorial registrar shall not register any land until the applicant has provided notarized statements from the pulenuu," (i.e. village mayor) "newspaper, and clerk of court, each of which states that the required notice has been given.

A.S.C.A. § 37.0103(c) (emphasis added).

Although the trial court held that P.L. No. 21-1 had no retroactive effect with respect to Talae's filing, we remain unpersuaded that general rules of statutory construction must strictly apply to land laws enacted by the Legislature of American Samoa under Art I, Sec. 3 R.C.A.S. Recognizing the unique nature of such statutes to preserve and protect the Samoan land tenure system and the intertwined Samoan way of life, we are inclined to presume the Legislature intended the broadest possible application of such statutes at their earliest effective date.

■ P.L. No. 21-1 amended the procedures for the public notice requirements of the land registration statute. It made three changes: (1) it required independent verification of the pre-existing village and courthouse posting requirements; (2) it required all notices of land registrations to receive verified publication in a local newspaper once each 30 days of the 60-day posting period; and (3) it compelled strict compliance with these procedures by prohibiting the registrar from registering land until such notice verifications were filed with the registrar.

Facially, these procedural amendments appear to have presented no substantial compliance problem for Talae's 12 day old proposal to register individually-owned land. Nor would any substantial rights of Talae's underlying claim of the Heirs' ownership of the land appear to have been diminished by applying the new procedures.

(2). Cases Cited by the Trial Court are Not Supportive of its Holding

The trial court cited 2 cases supporting its holding to deny application of P.L. No. 21-1 to Talae's pending land certification filing. In the *Ambrosino* case, the issue facing the Court was whether certain 1983 amendments to the Illinois Securities Act adding several new exemptions from registration requirements applied to the 1981 securities transactions being litigated. The Court held that the:

[The] general rule is that statutes and amendments are presumed to operate prospectively absent express statutory language to the contrary.

The Court noted however that:

[A]n exception to this rule exists where the statute or amendment relates only to remedies or procedures. *** Even then, however, the statute or amendment will not be applied retroactively if to do so would destroy a substantive right.

*Ambrosino v. Rodman & Renshaw, Inc.*, 635 F. Supp. 965, 974 (N.D. Ill. 1986). In the second cited case, *Franklin*, that court was faced with an issue of whether a person filing a bankruptcy case was entitled to discharge those debts dischargeable as of the date of filing or was allowed only to discharge those debts legally dischargeable as of the date of his final hearing. Although that court did rule that the preferred approach in bankruptcy cases was to' afford the bankrupt those debt discharges in effect at the time of filing, it did so only after holding:

> A court is to apply the law in effect at the time it renders its decision unless do so would result in manifest injustice or there is statutory direction or legislative history to the contrary.

*Franklin v New Mexico, ex rel. Dep't of Human Resources*, 730 F.2d 86 (10th Cir. 1984).

Neither the subject matter nor the reasoning of either case appears persuasively applicable to the instant matter. We need not, however, decide this issue in order to ultimately decide this case.

3. Registrar's Actual Knowledge Prevented Registrar from Certifying that the Statutory Requirements Had Been Met.

■ We hold narrowly that under the facts of this case, the actual knowledge of the Registrar of the removal of the posted notice of this land registration in the Village of Taputimu by its mayor during the first few days of public display prevented the Registrar from legally certifying that ". . . all the requirements of this chapter have been complied with. . ." under A.S.C.A. § 37.0103(d) (1989) or its identical predecessor A.S.C.A. § 37.0103(c) (1981). The Legislature has iterated and reiterated with sanctions its clear requirement that:

> Notice of the proposed registration shall be posted for 60 days on the bulletin board at the courthouse in Fagatogo and at 2 public places in the village in which or nearest to which the land is located. . .

A.S.C.A. § 37.0103(a).

The Registrar knew or should have known that the land registration notice procedures that his office practiced were to be amended during the 60 day notice period of Talae's proposed land registration. Indeed, these amendments appear specifically intended to independently verify that the required postings of notices were duly displayed during the 60 day notice period.

61

Regardless of whether P.L. No. 21-1 actually applied to this land registration, the Registrar could not reasonably be expected to rely upon his current posting practices when finally issuing the certificate of registration. His actual knowledge of the removal of the notice precluded any reasonable bases for certifying that all requirements of posting had been complied with.

We note that in an analogous case, *Foloi, supra,* this court remanded a land certification case for rehearing on the notice requirements when it appeared the notice had been posted for only 34 days. On rehearing the trial court found that notice in the village where the land was located had only been posted for 34 days, from August 6, 1987 through September 8, 1987, and that the territorial registrar's affidavit of posting was signed on August 6, 1987, ". . . before, rather than after the posting period was completed." *Foloi, et al v Tuitasi,* 22 A.S.R.2d 1, 3 (1992). The trial court concluded that "... compliance with the statutory notice requirements for registration of title under A.S.C.A. § 37.0101 et seq. is an essential feature of the registration process." *Id.* at 4. Further, because "... the 60 day notice period mandated under A.S.C.A. § 37.0103 was not met during the proceedings in 1987, there has not been a valid registration of the title to the land as Tuitasi's individually owned land...". *Id.* at 5.

We reach the same conclusion for similar reasons in the instant case. The registration fails for lack of notice.

### B. Issues for Relitigation

We also note, without deciding, several other areas of concern that this case presents. As it appears this decision may prompt a new filing for the registration of the subject land, we raise now, without deciding, those concerns so that those issues may be addressed in any subsequent administrative or judicial proceedings.

The 1971 land survey reflects six named individual members of the Tuitele family as claiming the subject land as their individually-owned land. Nearly 18 years later, that same survey was filed when Talae proposed registration of title to the land by the "Heirs of Uaine Tuitele".

The certificate affirming that notice was duly given to the village chiefs in council at Taputimu at the time the survey was executed some 16 years after the survey, by the village mayor. This person is the same individual which Talae fondly recalls as being a strong advocate for Talae's claim that the land is individually-owned during at least two instances when the Tulifua family asserted their communal land claims to the land. R.T. at 81-82; R.T. at 66.

Both during the 1971 survey and the 1989 registration, the senior matai title of the Tulifua family was vacant. Uaine Tuitele was the son of a holder of the Tulifua title. R.T. at 76. Talae is the grandson of Uaine Tuitele. R.T. at 66. Within this context, we view the proposed 1989 registration of title to the subject parcel of land by Talae as individually owned land of the "Heirs of Uaine Tuitele" as facially suspect.

The record contains no testimony identifying that group of people comprising the "Heirs". We are provided with no basis for either including or excluding the 6 named individuals asserting ownership of the land under the 1971 survey as being members of the group of 'Heirs'.

Nor can we reconcile the clear dictates of the recording statute with the use of such a factually and legally vague term. A.S.C.A. § 37.0101(a) provides:

> The owner of any land in American Samoa not previously registered may register his title thereto with the territorial registrar. (emphasis added).

This clear, statutory language appears to prohibit a single person, such as Talae, from registering anything other than his title to the subject land. No provision is set forth in this statute specifically authorizing a person to register the title of others or any interest less than clear title to the land.

By his use of the term "Heirs of Uaine Tuitele" (Talae's grandfather's heirs), Talae appears to claim title to the subject land vested in such heirs. Yet the Territory's statute governing intestate succession to real property other than communal lands does not support such a claim. A.S.C.A. § 40.0202 reads:

> When any person having any title to any real property dies without disposing of such real property by will, it shall be succeeded to and must be distributed, subject to the payment of debts and the rights of dower, in the following manner:
> (a) All real property shall lineally descend forever, to the issue of the decedent, but shall not lineally ascend, except as set forth in subsection (c).
> (b) On failure of lineal descendants, the brothers and sisters of the decedent, or their issue, shall succeed to the real property.
> (c) When the decedent has left no issue capable of inheriting, nor brothers, nor sisters, nor issue of such, the real estate shall vest in the father if living, and if not, in the mother, if living.
> (d) When any person dies leaving none who can claim as heir,

the surviving spouse shall inherit the estate.

(emphasis added).

██ On its face, this statute provides only for intestate succession to real property of a decedent with <u>title</u> to such real property, not a mere claim to such land. Nor does intestate succession occur automatically. The court confers such rights upon qualified and eligible heirs after fully complying with the statutes governing the orderly administration of estates. *See generally* A.S.C.A. §§ 40.0301-40.0342 and specifically 40.0332 which reads in pertinent part:

> [T]he trial division of the High Court shall make and file a decree of distribution, which shall name the persons entitled to the estate and the proportions or parts to which each is entitled. Such decree shall be conclusive as to rights of heirs, legatees, devisees and creditors....

In addition to our concerns that such a registration of title as proposed by Talae could thwart the orderly statutory scheme for the succession to individual titles of real property, the lack of named individuals in an initial land registration certificate frustrates the objects of that system. Title to the land is not quieted nor may persons desiring to deal with that land be afforded any certainty as to the conclusiveness of that certificate. *Foloi, supra.* Stated differently, such practices would lead to an extremely weak original link in a government sanctioned chain of title to individually owned lands.

Allowing registration of lands in such a fashion also raises notice issues. We could easily foresee a situation where a person could believe she was an "heir" and therefore not object to a land registration only to later learn that legally, she could not inherit an interest in the land and, as a result of the finalized land registration, she was barred from pursuing alternative legal claims to the land.

A final concern on the issue of registration of title to individually-owned lands by proxy and vesting title in preceding generations is the apparent potential for avoiding the strict Samoan blood requirements in the land alienation scheme adopted by the Legislature. The Legislature sought to preserve all communal and individually-owned lands for persons of at least one-half Samoan ancestry. A.S.C.A. § 37.0204(c) reads:

> If a person who has any nonnative blood marries another person who has any nonnative blood, the children of such marriage cannot inherit land unless they are of at least one-half native blood.

We see the potential for the easy avoidance of this statutory restriction by allowing the initial registration of individually-owned lands in the "Heirs" of a named ancestor.

## Conclusion

We do not lightly reverse the learned trial court's decision in this matter. We do so only in the face of compelling evidence that the minimal requirements for public notice of this land registration were clearly not met. In addition, the peculiar factual situation presented by this case, coupled with the application of related, relevant statutory mandates, buttress our admittedly narrow finding in this matter.

We specifically do not decide the issue of whether or not the subject land is the property of either of the parties herein. Either side may pursue their land registration objectives as provided by law and thereby quiet title to this land. Indeed, with both parties currently united behind their respective capable and forceful spokesman, the prompt pursuit of a title registration by either or both parties would afford a unique opportunity for both sides to exhaustively air their claims of ownership.

## Order

The Opinion and Order of the trial court is hereby reversed and this case remanded thereto with instructions to enter judgment for the Appellant HC Tulifua vacating the 1989 Certificate of Title to the 14.18 acre parcel of land "Nonuaimoa" in the Village of Taputimu to the Heirs of Uaine Tuitele as their individually owned land and to issue an order to that effect to the territorial registrar.

It is so ordered.